**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**06-22440
CIV-LENARD**

CASE NO.:

TORRES

SECURITIES AND EXCHANGE COMMISSION,   )
                                      )
                   Plaintiff,         )
                                      )
v.                                    )
                                      )
U.S. GAS & ELECTRIC, INC.,            )
LARRY WEBMAN,                         )
MELVIN WEBMAN,                        )
DONALD E. SECUNDA, and                )
DOUGLAS W. MARCILLE,                  )
                                      )
                   Defendants.        )
_____)

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiff Securities and Exchange Commission alleges that:

### INTRODUCTION

1. The Commission brings this action to permanently enjoin the Defendants from violating the antifraud and other provisions of the federal securities laws. Between March 2002 and August 2003, U.S. Gas & Electric, Inc. ("U.S. Gas") and its principals operated a boiler room and made a series of fraudulent offerings and sales of securities that raised approximately $6.8 million from more than 180 investors, many of whom were senior citizens.

2. The fraudulent offerings consisted of U.S. Gas securities and securities belonging to U.S. Gas' affiliated companies, USG&E Drilling I, LLC ("Drilling I"), USG&E Drilling II, LLC ("Drilling II"), and USG&E Gas Drilling III, LLC ("Drilling III") (collectively the "Drilling LLCs"). U.S. Gas is the managing member of each Drilling LLC and controls them.



3. Through Defendants Larry Webman, Mel Webman, Donald Secunda, and Douglas Marcille, U.S. Gas made material misstatements and omissions to investors in five separate securities offerings:

- The Webmans and Secunda misrepresented to investors that the company would register an initial public offering within certain time periods, and also misrepresented that certain stock the company was offering would trade publicly within those same periods;

- The Webmans and Secunda, as supervisors of the boiler room telemarketers, also baselessly and recklessly told investors in the Drilling LLCs' offerings they could expect to receive annual returns of 25 to 50 percent for decades;

- All four individual Defendants as well as U.S. Gas failed to disclose they were paying excessive commissions to boiler room telemarketers from the offering proceeds;

- The Defendants also misrepresented the amount of fees paid to U.S. Gas from the proceeds of the Drilling LLCs' offerings; and

- The Webmans and Secunda failed to disclose to investors that they authorized U.S. Gas to issue checks to fictitious vendors that they instead deposited into a bank account belonging to Mel Webman's check-cashing business and paid with offering proceeds from the sale of Drilling III securities.

## DEFENDANTS

4. U.S. Gas, a Delaware corporation incorporated under the name Harbortown Corp., has its principal place of business in North Miami, Florida. Since 2000, U.S. Gas' common stock has been registered with the Commission pursuant to Section 12(g) of the Securities Exchange Act of 1934 ("Exchange Act"). As an entity with its stock registered pursuant to Section 12(g), U.S. Gas is required to file periodic reports with the Commission, but

has failed to file any of these mandated reports since the end of 2001. U.S. Gas' registered stock is not the stock at issue in the offerings described in this Complaint.

5. Larry Webman, 58, is a resident of Aventura, Florida. In 1991, a federal court convicted and sentenced Webman to prison for wire and mail fraud, and in 1982, a federal court permanently enjoined him from committing future violations of the federal commodities laws as a result of a lawsuit the Commodities Futures Trading Commission ("CFTC") filed against him for violating the antifraud provisions of the commodities laws. In November 2005, a federal court entered a default judgment against Webman based on a complaint the CFTC filed charging him with the fraudulent solicitation of foreign currency options contracts. The Defendants did not disclose Webman's prior conviction and civil fraud judgments to investors, nor did they disclose his role at U.S. Gas. He was a *de facto* principal of U.S. Gas, controlling the day-to-day operations of the company from December 2001 until relinquishing control over operations in September 2003, shortly after the Commission began its investigation of the company.

6. Mel Webman, 59, was a resident of Pembroke Pines, Florida, during the operative facts alleged herein. He currently resides in the Miami Federal Detention Center. He is Larry Webman's brother. In 1997, Webman served time in a French prison for drug smuggling. The same federal court that enjoined his brother also permanently enjoined him in 1982 against future violations of the federal commodities laws, and the same federal court that entered a judgment against his brother also entered a default judgment against him in November 2005 based on the CFTC charges. The Defendants did not disclose Webman's prior convictions and civil fraud judgments to investors, nor did they disclose his role at U.S. Gas. Webman also was a *de facto* principal of U.S. Gas. He also relinquished control over the company in September 2003. In 2006, he pled guilty and was sentenced to 8½ years in prison by a federal judge for conspiracy to

commit mail and wire fraud in connection with his activities at Checkmate Enterprises Inc., a check-cashing business he operated.

7. Secunda, 59, was a resident of Miramar, Florida, during the operative facts alleged herein. He currently resides in New York, New York. He was the Chief Executive Officer of U.S. Gas from March 2002 until he resigned in October 2004. Secunda was a beneficial owner of a majority of U.S. Gas' outstanding shares. He no longer maintains any ownership interest in the company.

8. Marcille, 49, resides in Miami, Florida. He was the Chief Financial Officer of U.S. Gas from December 2002 until September 2004, and is currently the company's Chief Executive Officer.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), and 22(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. §§77t(b), 77t(d), and 77v(a); and Sections 21(d), 21(e), and 27 of the Exchange Act, 15 U.S.C. §§78u(d), 78u(e), and 78aa.

10. Venue is proper in the Southern District of Florida because many of the Defendants' acts and transactions constituting violations of the Securities Act and the Exchange Act occurred in the Southern District of Florida. In addition, the principal place of business of U.S. Gas is in the Southern District of Florida, and, during the events this Complaint describes, Larry and Mel Webman, Secunda, and Marcille resided in the Southern District of Florida.

11. The Defendants, directly and indirectly, made use of the means and instrumentalities of interstate commerce, the means and instruments of transportation and communication in interstate commerce, and the mails, in connection with the acts, practices, and courses of business set forth in this Complaint.

## THE WEBMANS' ROLES AT U.S. GAS

12. Larry Webman controlled the day-to-day operations of U.S. Gas, and made or participated in all key decisions at the company, including those concerning compensation, disbursement of funds from the company, and hiring and firing. He also had final authority over the marketing of U.S. Gas' and the Drilling LLCs' securities. Webman supervised his brother Mel's operation of the boiler room and received daily briefings on its activities. He received indirect transaction-based compensation from the securities the Defendants sold in that almost all the revenues U.S. Gas took in came from the fraudulently sold securities, and Webman's salary and other compensation was based on those revenues.

13. Mel Webman was boiler room manager, and was primarily responsible for supervising the telemarketers. He hired them, trained them how to pitch U.S. Gas' securities to potential investors, tracked sales, and calculated the telemarketers' sales commissions. Webman also prepared the sales scripts the telemarketers used. He received transaction-based compensation in that U.S. Gas paid him a commission of approximately two percent of all securities sold.

14. The Webmans supervised the solicitation of numerous investors to purchase securities U.S. Gas and the Drilling LLCs issued. They drafted or approved the dissemination of the fraudulent offering materials given to potential investors, including the private placement memoranda, newsletters, and brochures. The Webmans monitored what the telemarketers were telling prospective investors. They controlled when commissions were paid to the boiler room telemarketers and decided how much commission each telemarketer would receive. They also determined how management fees would be paid.

## U.S. GAS' FRAUDULENT OFFERINGS

### A. The Offerings

15. From March 2002 to August 2003, U.S. Gas and the Drilling LLCs raised approximately $6.8 million from investors through five unregistered securities offerings. The securities the Defendants sold in these five offerings are not the securities U.S. Gas registered as common stock with the Commission in 2000.

16. U.S. Gas and the Drilling LLCs offered and sold their securities to the public through the boiler room Larry and Mel Webman operated out of U.S. Gas' offices. The boiler room consisted of 15 to 20 telemarketers the Webmans hired to make cold calls to prospective investors. The telemarketers targeted investors from lead lists containing the names of prospects and their financial information.

17. A staff of junior telemarketers or "fronters" made the initial calls to individuals on the lead lists. The fronters pitched U.S. Gas' securities to potential investors using sales scripts promising them exorbitant rates of returns and minimal risks associated with the investment. U.S. Gas' scripts contained several canned sales pitches and answers to investor questions. They consisted of different telemarketing approaches, tailored to investor profiles, such as "Wants to Wait," "Retirement Nest Egg," and "Follower."

18. If a potential investor expressed interest, the boiler room staff sent a private placement memorandum to the investor by overnight delivery. In the Drilling LLCs' offerings, the boiler room staff also overnighted other materials to the investor, which included a discussion of the investment's tax benefits and a Limited Liability Company Agreement. A day or so later, a senior sales person or "closer" would call the potential investor to complete the sale. The U.S. Gas closer script titles include, "Blueprint Close" and the "Velvet Hammer Close."

The Blueprint Close contained statements such as "my blueprint is to make sure the investment is perfect for my client," and the Velvet Hammer Close contained the following sales pitch: "I'm not talking about all of your available cash Mr./Mrs. ____."

19. The first offering at issue took place in March 2002 and offered common stock in U.S. Gas. The second offering occurred in June 2002 and offered a combination of common and preferred stock. Approximately 140 investors, located throughout the United States, bought $2.9 million of the company's stock in these two offerings.

20. From December 2002 to August 2003, U.S. Gas raised another $3.9 million from investors by fraudulently offering and selling "membership interests" in the Drilling LLCs. These membership interests entitled the investor to a portion of sales proceeds of natural gas the wells owned by the Drilling LLCs produced.

21. Drilling I and Drilling II each offered $1 million in membership interests. These two offerings occurred in December 2002 and March 2003, respectively. In the Drilling III offering, investors purchased membership interests totaling $1.9 million between May and August 2003. A total of 87 investors purchased interests in these three offerings, 40 of whom had previously bought U.S. Gas stock in the first two offerings.

22. The private placement memorandum for each of the three Drilling LLCs described the membership interests as securities.

### B. Material Misrepresentations and Omissions

23. In connection with the five offerings, the Defendants, together and individually, made material misrepresentations or omitted to disclose material information to prospective investors about the risks and profitability of their investments and the use of their proceeds.

### *1. False Statements Regarding U.S. Gas Going Public*

24.     Under the direction of Larry and Mel Webman, the boiler room telemarketers falsely represented to investors in the two U.S. Gas offerings the company would be going public by filing an SB-2 registration statement with the Commission in six months to a year. The telemarketers told investors that once U.S. Gas filed the SB-2 statement, investors would receive publicly tradeable shares in exchange for the shares they purchased in the private offerings, and the publicly traded shares would sell for $5 to $12 a share. This would supposedly result in a substantial profit for investors because they were buying their shares in the private offerings for $1.75 to $2.50 a share.

25.     To perpetuate the fraud, the Webmans and Secunda had U.S. Gas mail newsletters to existing investors falsely claiming the company's unregistered stock would soon trade publicly. For example, in a newsletter dated October 2002, U.S. Gas told investors "our game plan is on schedule: file the SB-2 in the next couple of weeks and become free trading 90-120 days thereafter."

26.     In an April 2003 newsletter, the company stated "[w]e anticipate having free-trading stock at a viable price by year end." Finally, a newsletter dated June 2003 claimed "[w]e are still on target to have a public market for our stock by the first quarter of 2004."

27.     These representations were false and misleading. U.S. Gas was never close to undertaking a public offering and was incapable of meeting the newsletter timetables. Although the company retained two lawyers to assist in the drafting of an SB-2 statement, neither of the lawyers ever came close to completing a draft of a registration statement. In addition, the company never retained an auditor to even begin performing an audit of the company's books and records required to file an SB-2 statement. Furthermore, a forensic accounting U.S. Gas

initiated in about December 2002 notified the Defendants that the company did not maintain sufficient books and records to obtain such audited financial statements. As a result of that finding and the advice of the second lawyer, the company abandoned all efforts to complete and file an SB-2 statement by March 2003.

### 2. Promises of Unrealistic Returns

28. At the Webmans' direction, the telemarketers told investors in the Drilling LLC offerings they would receive annual returns of 25 to 50 percent on their investment for as long as 20 to 40 years.

29. These promised profits were baseless and the Defendants knew or were reckless in not knowing the securities they offered could not generate such high returns, especially over such a lengthy period of time. The Defendants knew or were reckless in not knowing that 60 to 70 percent of the Drilling LLCs gas production would be exhausted after the first five to seven years of operation. At least as early as December 2002, the company drilling the Drilling LLCs' gas wells informed Secunda that the rate of decline in natural gas production was typical for wells located in the Appalachian region where the Drilling LLC wells were located. Given this anticipated decline in production, maintaining such high returns for investors would require rapid and consistent increases in natural gas prices, which no one could predict with any reasonable degree of certainty.

30. In fact, returns from the Drilling LLCs were less than ten percent annually for Drilling I and II and less than five percent for Drilling III.

### 3. Misuse of Proceeds from the Offerings

31. U.S. Gas, the Webmans, and Secunda failed to disclose to prospective investors they were using a significant portion of the proceeds from the offerings to pay sales commissions

to the boiler room telemarketers. U.S. Gas records show the Defendants paid 12 percent sales commissions to telemarketers for the three Drilling LLC offerings. An additional two percent went to Mel Webman as the boiler room manager. Further, the Defendants paid sales commissions as high as 13 percent to telemarketers in the two U.S. Gas offerings

32. None of the materials distributed to investors in the various offerings disclosed U.S. Gas would pay sales commissions to the telemarketers.

33. U.S. Gas, through the Webmans, Secunda, and Marcille, also misrepresented to prospective investors in the Drilling III private placement memorandum that management fees paid out of the offering proceeds would total no more than $680,000. In fact, U.S. Gas was paid more than $1.1 million in management fees from the funds raised in the Drilling III offering.

34. In addition, Mel Webman, with the help of Larry Webman and Secunda, misappropriated more than $83,000 from the Drilling III offering proceeds. The Webmans and Secunda issued checks totaling $64,000 from U.S. Gas to fictitious vendors of telemarketing leads. U.S. Gas bank records show that these checks, and a check payable to U.S Gas from the company that drilled the gas wells for the Drilling LLCs, were deposited in a bank account in the name of Checkmate Enterprises, Inc., a check-cashing business Mel Webman owned and operated. The proceeds from the Drilling III offering were used to fund the checks U.S. Gas issued.

### U.S. GAS' FAILURE TO FILE MANDATORY REPORTS

35. Since U.S. Gas filed its Form 10-KSB for its fiscal year ending September 30, 2001, Defendant U.S. Gas has failed to file with the Commission an annual report on Form 10-KSB for each fiscal year after the last full year for which financial statements were filed in its registration statement; and any quarterly reports on Form 10-QSB.

## CLAIMS FOR RELIEF

### COUNT I

### Fraud In Violation Of Section 17(a)(1) Of The Securities Act

### (Against Defendants U.S. Gas, Larry Webman, Mel Webman, and Secunda)

36. The Commission repeats and realleges paragraphs 1 through 35 of its Complaint.

37. Defendants U.S. Gas, Larry Webman, Mel Webman and Secunda have directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by use of the mails, in the offer or sale of securities, as described in this Complaint, knowingly, willfully or recklessly employed devices, schemes or artifices to defraud.

38. By reason of the foregoing, Defendants U.S. Gas, Larry Webman, Mel Webman and Secunda, have directly and indirectly, violated and, unless enjoined, will continue to violate Section 17(a)(1) of the Securities Act, 15 U.S.C. § 77q(a)(1).

### COUNT II

### Fraud In Violation Of Sections 17(a)(2) And 17(a)(3) Of The Securities Act

### (Against all Defendants)

39. The Commission repeats and realleges paragraphs 1 through 35 of its Complaint.

40. The Defendants, directly and indirectly, by use of the means or instruments of transportation or communication in interstate commerce and by the use of the mails, in the offer or sale of securities, as described in this Complaint, have: (a) obtained money or property by means of untrue statements of material facts and omissions to state material facts necessary to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (b) engaged in transactions, practices and courses of business which are now

11

operating and will operate as a fraud or deceit upon purchasers and prospective purchasers of such securities.

41.    By reason of the foregoing, the Defendants, directly and indirectly, have violated and, unless enjoined, will continue to violate Sections 17(a)(2) and 17(a)(3) of the Securities Act, 15 U.S.C. §§ 77q(a)(2) and 77q(a)(3).

## COUNT III

### Fraud In Violation Of Section 10(b) Of The Exchange Act And Rule 10b-5 Promulgated Thereunder

**(Against Defendants U.S. Gas, Larry Webman, Mel Webman and Secunda)**

42.    The Commission repeats and realleges paragraphs 1 through 35 of its Complaint.

43.    Defendants U.S. Gas, Larry Webman, Mel Webman and Secunda have directly and indirectly, by use of the means and instrumentality of interstate commerce, and of the mails in connection with the purchase or sale of the securities, as described in this Complaint, knowingly, willfully or recklessly: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices and courses of business which have operated as a fraud upon the purchasers of such securities.

44.    By reason of the foregoing, Defendants U.S. Gas, Larry Webman, Mel Webman and Secunda have directly or indirectly violated and, unless enjoined, will continue to violate Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

## COUNT IV

### Sale of Unregistered Securities In Violation of Sections 5(a) And 5(c) of The Securities Act
**(Against all Defendants)**

45. The Commission repeats and realleges its allegations set forth in paragraphs 1 through 35 of its Complaint.

46. The stock of U.S. Gas and the membership interests in the Drilling LLCs the Defendants offered and sold as alleged in this Complaint constitute securities as defined in the Securities Act and the Exchange Act.

47. The Defendants, directly or indirectly, singly or in concert, have made, and are making, use of the means or instruments of transportation or communication in interstate commerce, or of the mails, to offer and sell securities through the use or medium of a prospectus or otherwise when no registration statement has been filed or was in effect as to such securities and when no exemption from registration was available.

48. By reason of the foregoing, the Defendants, directly and indirectly, have violated, and unless enjoined, will continue to violate Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

## COUNT V

### Failing to File Periodic Reports In Violation of Section 13(a) of the Exchange Act And Rules 13a-1 And 13a-13 Thereunder

### (Against Defendant U.S. Gas)

49. The Commission repeats and realleges its allegations set forth at paragraphs 1 through 35 of its Complaint.

50. Section 13(a) of the Exchange Act provides that every issuer of a security registered pursuant to Section 12 of the Exchange Act shall file with the Commission annual and other periodic reports as required by the rules prescribed thereunder. Rule 13a-1 requires such issuers to file annual reports, and Rule 13a-13 requires such issuers to file quarterly reports.

51. Since filing its registration with the Commission in 2000, U.S. Gas has been an issuer subject to these reporting requirements.

52. Since U.S. Gas filed a Form 10-KSB for its fiscal year ending September 30, 2001, Defendant U.S. Gas has failed to file with the Commission: (i) an annual report on Form 10-KSB for each fiscal year after the last full year for which financial statements were filed in its registration statement; and (ii) any quarterly reports on Form 10-QSB.

53. By reason of the foregoing, U.S. Gas has directly or indirectly violated and, unless enjoined, will continue to violate, Section 13(a) of the Exchange Act [15 U.S.C. §§78m(a)] and Rules 13a-1 and 13a-13 thereunder [17 C.F.R. §§240.13a-1 and 240.13a-13].

## COUNT VI

### Unregistered Broker-Dealer in Violation of Section 15(a)(1) of the Exchange Act

**(Against Defendants Larry Webman and Mel Webman)**

54. The Commission repeats and realleges paragraphs 1 through 35 of its Complaint.

55. Defendants Larry Webman and Mel Webman, directly and indirectly, by use of the mails or any means or instrumentality of interstate commerce, while acting as brokers or dealers engaged in the business of effecting transactions in securities for the accounts of others, have been effecting transactions in securities, or induced or attempted to induce the purchase or sale of securities, without registering as broker-dealers in accordance with Section 15(b) of the Exchange Act, 15 U.S.C. § 78o(b).

56. By reason of the foregoing, Defendants Larry Webman and Mel Webman, directly and indirectly, have violated and, unless enjoined, will continue to violate Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1).

## RELIEF REQUESTED

**WHEREFORE**, the Commission respectfully requests that the Court:

### I.

### Declaratory Relief

Declare, determine and find that the Defendants have committed the violations of the federal securities laws alleged herein.

### II.

### Permanent Injunctive Relief

Issue a Permanent Injunction, restraining and enjoining:

(1) Defendant U.S. Gas, its officers, principals, agents, servants, employees, and all persons in active concert or participation with it, from violating: (a) Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); (b) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5; (c) Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c); and (d) Section 13(a) of the Exchange Act and Rules 13a-1 and 13a-13, 15 U.S.C. §§78m(a) and 17 C.F.R. §§240.13a-1 and 240.13a-13; and

(2) Defendants Larry Webman and Melvin Webman, their principals, agents, servants, employees, and all persons in active concert or participation with them, and each of them, from violating: (a) Section 17(a) of the Securities Act, 15 U.S.C. § 77q(a); (b) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5; (c) Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c); and (d) Section 15(a) of the Exchange Act, 15 U.S.C. § 78o(a)(1); and

(3) Defendant Secunda, his principals, agents, servants, employees, and all persons in active concert or participation with him, from violating: (a) Section 17(a) of the Securities Act,

15 U.S.C. § 77q(a); (b) Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 240.10b-5; (c) Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c); and

(4) Defendant Marcille, his principals, agents, servants, employees, and all persons in active concert or participation with him, from violating: (a) Section 17(a)(2) and (3) of the Securities Act, 15 U.S.C. § 77q(a)(2) and (3); and (b) Sections 5(a) and 5(c) of the Securities Act, 15 U.S.C. §§ 77e(a) and 77e(c).

### III.

### Disgorgement and Prejudgment Interest

Issue an Order directing the Defendants to disgorge all profits or proceeds that they have received as a result of the acts and/or courses of conduct complained of herein, with prejudgment interest.

### IV.

### Penalties

Issue an Order directing all Defendants to pay civil money penalties pursuant to Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d); and Section 21(d) of the Exchange Act, 15 U.S.C. § 78u(d).

### V.

### Officer and Director Bar

Pursuant to Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], issue an Order barring Secunda from acting as an officer or director of any issuer that has a class of securities registered with the Commission pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l], or that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)].

## VI.

### Penny Stock Bar

Issue an Order barring Larry Webman, Mel Webman, and Secunda from participating in an offering of a penny stock pursuant to Sections 20(g) and 22(a) of the Securities Act, and Section 21(d)(6) of the Exchange Act.

## VII.

### Further Relief

Grant such other and further relief as may be necessary and appropriate.

## VIII.

### Retention of Jurisdiction

Further, the Commission respectfully requests that the Court retain jurisdiction over this action in order to implement and carry out the terms of all orders and decrees that may hereby be entered, or to entertain any suitable application or motion by the Commission for additional relief within the jurisdiction of this Court.

Respectfully submitted,

September 27, 2006

By: _____
Roger Cruz
Senior Trial Counsel
Florida Bar No. 157971
Direct Dial: (305) 982-6379

Edward D. McCutcheon
Senior Counsel
Florida Bar No. 683841
Direct Dial: (305) 982-6380

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
801 Brickell Avenue, Suite 1800
Miami, Florida 33131
Telephone: (305) 982-6300
Facsimile: (305) 536-4154

**JS 44** (Rev. 11/05)

# CIVIL COVER SHEET

06-22440

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS
Securities and Exchange Commission

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Roger Cruz, Esq. (305) 982-6379
Securities and Exchange Commission, 801 Brickell Ave., Suite 1800, Miami, FL 33131
DADE 06CV22440 / Lenard / Torres

### DEFENDANTS
U.S. Gas & Electric, Inc., Larry Webman, Melvin Webman, Donald E. Secunda, and Douglas W. Marcille

County of Residence of First Listed Defendant: Miami-Dade
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT LAND INVOLVED.

Attorneys (If Known)
See Attached List

TORRES

**(d)** Check County Where Action Arose: ✓ MIAMI-DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

✓ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability / **PERSONAL PROPERTY** / ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ■ 850 Securities/Commodities/Exchange |
| ☐ 195 Contract Product Liability | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights / ☐ 550 Civil Rights | | | |
| | ☐ 555 Prison Condition | | | |

### V. ORIGIN (Place an "X" in One Box Only)

✓ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed- (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).
(See instructions second page):
a) Re-filed Case ☐ YES ✓ NO       b) Related Cases ☐ YES ✓ NO
JUDGE _____       DOCKET NUMBER _____

### VII. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (Do not cite jurisdictional statutes unless diversity):
15 U.S.C. § 77q(a), 15 U.S.C. § 78j(b), 15 U.S.C. §§ 77e(a) and 77e(c). Violations of the federal securities laws
LENGTH OF TRIAL via 5 days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Perm. Inj., disgorgement, penalties
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ✓ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE
SIGNATURE OF ATTORNEY OF RECORD [signature]
DATE 09/27/06

FOR OFFICE USE ONLY
AMOUNT _____ RECEIPT # _____ IFP _____

**Attorneys for Defendants**

Philip Schwartz, Esq.
Akerman Senterfitt
One Southeast Third Avenue
28th Floor
Miami, FL 33131
Telephone: 305/982-5604
Facsimile: 305/374-5095
*Attorney for U.S. Gas & Electric, Inc.*

Leonard Bloom, Esq.
Akerman Senterfitt
One Southeast Third Avenue
28th Floor
Miami, FL 33131
Telephone: 305/374-5600
Facsimile: 305/358-0521
*Attorney for Donald Secunda and Douglas W. Marcille*